THE BROADWAY NATIONAL BANK OF BAYONNE, A NATIONAL BANKING INSTITUTION, PLAINTIFF, v. THE PARKING AUTHORITY OF THE CITY OF BAYONNE, AND VINCENT BURKE, FRANK CARPENTER, Sr., JACOB DROGIN, WALTER P. PAGUREK, ALAN F. PAUL, AND JAMES GARITO, ALAN KONIECZKO, SAMUEL LEVIS AND CHESTER ZEBROWSKI, DEFENDANTS.

VINCENT BURKE, FRANK CARPENTER, Sr., JACOB DROGIN AND WALTER P. PAGUREK, PLAINTIFFS, v. JAMES GARITO, ALAN KONIECZKO, SAMUEL LEVIS, CHESTER ZEBROWSKI, ALLEGED COMMISSIONERS OF THE PARKING AUTHORITY OF THE CITY OF BAYONNE; FRANCIS G. FITZPATRICK, ALFRED DWORZANSKI, WILLIAM MARTIN, JOSEPH Le FANTE, DENNIS COLLINS AND JOSEPH MAKOWSKI, MEMBERS OF THE GOVERNING BODY OF THE CITY OF BAYONNE, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Superior Court of New Jersey
Law Division

Decided August 2, 1962.

*Messrs. Dembe, Dembe and Gallagher,* attorneys for Broadway National Bank of Bayonne (*Mr. Martin Tuman,* appearing).

*Mr. James P. Dugan,* attorney for James Garito, Alan F. Paul, Alan Konieczko, Samuel Levis and Chester Zebrowski.

*Messrs. Camp and Simmons,* attorneys for Vincent Burke, Frank Carpenter, Sr., Jacob Drogin and Walter P. Pagurek (*Mr. Roy G. Simmons,* appearing).

*Mr. Frank J. Ziobro,* City Attorney, attorney for Francis G. Fitzpatrick, Alfred Dworzanski, William Martin, Joseph Le Fante, Dennis Collins and Joseph Makowski.

FURMAN, J. S. C. Two actions are before the court. The Broadway National Bank of Bayonne has filed a complaint in interpleader against the Parking Authority of the City of Bayonne, Vincent Burke, Frank Carpenter, Sr.,

Jacob Drogin, Walter P. Pagurek, Alan F. Paul, James Garito, Alan Konieczko, Samuel Levis and Chester Zebrowski. By an order to show cause returnable today the plaintiff bank seeks an order of this court directing it to pay into court the bank account standing to the credit of the Parking Authority of the City of Bayonne, discharging the plaintiff bank from any liability to the defendants or any one of them, and directing the defendants to interplead their right and title to the Parking Authority bank account. Garito, Konieczko, Levis and Zebrowski have moved for a judgment dismissing the interpleader action and directing the plaintiff bank to turn over to them the funds held in the Parking Authority bank account in the Broadway National Bank of Bayonne.

The second pending action is a prerogative writ action instituted by Burke, Carpenter, Drogin and Pagurek against Garito, Konieczko, Levis and Zebrowski and the mayor and members of the Council of the City of Bayonne. By order to show cause in this action returnable today the plaintiffs seek a judgment enjoining defendants from interfering with their terms of office and their legal authority and adjudicating which individuals constitute the commissioners of the Parking Authority of the City of Bayonne. Defendants Garito, Konieczko, Levis and Zebrowski have moved for summary judgment in the prerogative writ action.

The facts are undisputed. The City of Bayonne was governed by a board of commissioners in accordance with the Walsh Act until July 1, 1962. The board of commissioners enacted an ordinance creating the Parking Authority of the City of Bayonne on December 17, 1958. Burke, Carpenter, Pagurek, Drogin and Paul were appointed as commissioners and Burke, Carpenter and Pagurek were subsequently reappointed for five-year terms pursuant to *N. J. S. A.* 40:11A–4. Mayor-Council Plan C of the Faulkner Act (*N. J. S. A.* 40:69A–1 *et seq.*) was adopted by referendum in the City of Bayonne and took effect on July 1, 1962. The new municipal council appointed Garito,

Konieczko, Paul, Levis and Zebrowski as commissioners of the Parking Authority of the City of Bayonne on July 16, 1962. Paul is thus a commissioner of the Parking Authority by appointment of the former board of commissioners and of the present governing body. Burke, Carpenter, Pagurek and Drogin claim that they have valid continuing terms as commissioners of the Parking Authority. Garito, Konieczko, Levis and Zebrowski contend that the terms of the previous commissioners ceased and determined on the effective date of the Faulkner Act in the City of Bayonne and that their own subsequent appointments filled vacancies in the five offices of commissioners of the Parking Authority. No ordinance was adopted by the incoming municipal council reestablishing the Parking Authority on or after July 1, 1962. An interim resolution creating a Parking Authority was adopted on July 25, 1962. The Broadway National Bank of Bayonne has brought suit for interpleader to protect itself in the face of claims by both the "old" commissioners and the "new" commissioners that they constitute the legal and authorized Parking Authority of the City of Bayonne.

The ultimate legal issue will be determined here today. The Faulkner Act has as one of its basic objectives a free hand for a newly formed municipal government in the selection of its officers and personnel. The mayor and council, referring to a Plan C municipality, hold in general the appointive authority over officers and employees, unhampered by holdover boards and agencies. To effectuate this intent *N. J. S. A.* 40:69A–207 provides:

"At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine; provided, that nothing in this section shall be construed to abolish the office or terminate the term of office of any member of the board of education, trustees of the free public library, commissioners of a local housing authority, municipal magistrates or of any official or employee now protected by any tenure of office law, or of any

policeman, fireman, teacher, principal or school superintendent whether or not protected by a tenure of office law."

The Faulkner Act in another section, *N. J. S. A.* 40:69A–26, refers to general law as controlling in a charter form of government unless inconsistent with the Faulkner Act, but subject to the transition provisions of the Faulkner Act, including *N. J. S. A.* 40:69A–207.

The Supreme Court has construed *N. J. S. A.* 40:69A–207 in *Myers v. Cedar Grove Tp.,* 36 *N. J.* 51 (1961), ruling that the offices of members of a municipal board of health, and consequently the board of health itself, are abolished upon the establishment of a Faulkner Act form of government. Justice Proctor wrote for the court, at *page* 60:

"A board cannot exist when its constituent parts—all of its offices—are abolished. Certainly the Legislature never intended the anomalous situation of retaining boards without offices. And we do not agree that the offices are abolished subject to re-establishment by municipal ordinance. * * *"

*Cf. Istvan v. Naar,* 84 *N. J. L.* 113 (*Sup. Ct.* 1913).

Significant differences exist, however, between a board of health, which is in all respects a component and subordinate arm of a municipal government, and a parking authority, which is a separate corporate entity with autonomous functions, *inter alia,* in incurring bonded indebtednesses and raising revenues. The statutory nature of the parking authority must be analysed in detail, therefore, in order to determine whether the office of commissioner is an office existing in a municipality subject to abolishment, with the concurrent expiration of the terms of incumbent office holders, upon the Faulkner Act's taking effect within the municipality.

The Parking Authority Law is *N. J. S. A.* 40:11A–1 *et seq.* (*L.* 1948, *c.* 198). The act and its amendments in various sections describe and delimit a parking authority established pursuant thereto. It is a public body corporate and politic, and a political subdivision of the State con-

stituting an agency and instrumentality of the municipality in which it is formed. *N. J. S. A.* 40:11A–4. It has the same territorial boundaries as the boundaries of the municipality creating it. *N. J. S. A.* 40:11A–6. By amendment in *L.* 1958, *c.* 22, "A parking authority shall not be subject to, or constitute a municipality or agency or component of a municipality subject to, the provisions of chapter 50 or any other provisions of Title 40 of the Revised Statutes." *N. J. S. A.* 40:11A–23(4).

As a subsequent enactment the exemption of parking authorities from the provisions of *Title* 40, including *N. J. S. A.* 40:69A–26, *L.* 1950, *c.* 210, and *N. J. S. A.* 40:69A–207, *L.* 1950, *c.* 210, as amended *L.* 1954, *c.* 69, is entitled to prevail over inconsistent prior enactments within the Faulkner Act. *Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199, 224 (1960). But *cf. Stark v. Fell,* 124 *N. J. L.* 475, 478, 479 (*Sup. Ct.* 1940).

The specific control of the municipal government over the parking authority ceases with its establishment by ordinance, except for the continuing appointive authority over the five commissioners. In other respects the parking authority carries out its statutory purposes independent of the municipality in which it functions. Its powers, set out in *N. J. S. A.* 40:11A–6, are broad. It constructs and operates off-street parking projects. It fixes and collects parking fees and other charges, with no obligation or authority to pay them over to the municipality. It has perpetual succession. It may sue and be sued. It enjoys the right of eminent domain. It may issue bonds secured by its revenues or by mortgages on its property. Its bonds may in turn be guaranteed by the municipality. It may acquire or manage municipal facilities with the consent of the governing body. Municipalities may cooperate by the grant or loan of funds, the sale or lease of lands, parking meters or other equipment and other aid. The Parking Authority Law is part of any contracts entered into by the parking authority, including contracts with bondholders.

The payment and discharge of its bonds and other obligations must precede the termination of its existence. *N. J. S. A.* 40:11A–1 *et seq.*

The courts have several times reviewed and analysed the essential characteristics of municipal parking authorities and their place in the governmental scheme. That parking authorities are entities independent of the municipalities creating them is recognized in *City of Trenton v. Lenzner,* 16 *N. J.* 465 (1954); *State v. Parking Authority of the City of Trenton,* 29 *N. J. Super.* 335 (*App. Div.* 1954), and *Brandt Enterprises, Inc. v. City of Camden,* 76 *N. J. Super.* 30 (*Law Div.* 1962). *City of Trenton v. Lenzner* deals with the statutory purposes in the enactment of the Parking Authority Law and upholds its constitutionality in some aspects, but is not otherwise significant here.

Neither *State v. Parking Authority of the City of Trenton* nor *Brandt Enterprises, Inc. v. City of Camden* squarely faces the issue before the court today, but both are strongly persuasive authorities. The Appellate Division by then Judge Proctor held in the *Trenton* case that the employees of that parking authority were not governed by civil service, although civil service was effective within the municipality. A further holding is that parking authority employees were not through legislative silence brought under civil service, in view of the parking authority's specific authority to employ and fix the duties of its personnel. After discussing the statutory framework, Judge Proctor concludes (at *page* 338):

"All this makes it plain that the parking authority, although created by and in a municipality, is an independent public corporate entity, distinct and separate from the municipality."

In the recent case concerning the Parking Authority of the City of Camden, Judge Schalick ruled for this court that the acquisition of parking lots and other property owned by the City of Camden Parking Authority was a legitimate municipal expenditure for which bonds might

be issued by the City of Camden, contingent upon the payment and discharge of the Parking Authority bonds and other obligations. His opinion states:

"A parking authority created pursuant to the Parking Authorities Law, *N. J. S. A.* 40:11A–1 *et seq.* is not a subdivision or agency of the municipality creating it. *N. J. S. A.* 40:11A–23(4) provides that:
'(4) A parking authority shall not be subject to, or constitute a municipality or agency or component of a municipality subject to, the provisions of chapter 50 or any other provisions of Title 40 of the Revised Statutes.'
Clearly, then, the parking authority is a separate municipal corporation whose corporate existence is distinct from that of its creator. Otherwise *N. J. S. A.* 40:11A–1 *et seq.* would produce the untoward results of having a municipality pledge its own funds to itself, transfer its own property to itself and guarantee its own bonds to investors."

See also *State v. John P. Callaghan Co.*, 70 *N. J. Super.* 585 (*Law Div.* 1961), holding that a parking authority is an independent public corporate entity, not a private corporation, and that an indictment for a conspiracy to defraud it states a crime to defraud the public.

Judicial decisions construing the Faulkner Act likewise fail to hold squarely on the point in issue. *Myers v. Cedar Grove Tp., supra,* is not controlling because of the divergent status of boards of health and parking authorities. The inclusion of commissioners of local housing authorities by the 1954 amendment to *N. J. S. A.* 40:69A–207, among the offices subject to abolishment and the terms of officers subject to expiration, supports the claim here of the newly appointed group of commissioners of the Parking Authority of the City of Bayonne. Local housing Authorities, like parking authorities, enjoy financial autonomy in producing revenues and incurring indebtedness. The recent decision in *Jordan v. Zidel*, 75 *N. J. Super.* 553 (*Law Div.* 1962), is the most apposite judicial authority. Judge Schalick there ruled that the Faulkner Act, in *N. J. S. A.* 40:69A–207, effected the determination of the terms of office of members of a municipal utilities authority estab-

lished under *N. J. S. A.* 40:14B–1 *et seq.,* also a financially autonomous authority with bond issuing and revenue producing powers. His opinion, which is entitled to respect but is not binding, views the municipal utilities authority as continuously in force and effect in the municipality, but the terms of office of its members as ceasing and determining upon the effective date of the Faulkner Act and the function of replacing them by the newly formed governing body as equivalent to the filling of vacancies arising from death or resignation.

Despite the inclusion of commissioners of local housing authorities in the exception to *N. J. S. A.* 40:69A–207, and the holding in *Jordan v. Zidel,* I am convinced that the Faulkner Act provision itself, as construed by the Supreme Court in *Myers v. Cedar Grove Tp.,* compels a contrary result to that reached in *Jordan v. Zidel* with reference to members of a municipal utilities authority. The effect of *N. J. S. A.* 40:69A–207 cannot be split. Pursuant to it all offices existing in the municipality are abolished and the terms of all elected and appointed officers filling such offices cease and determine, with the given exceptions. The term "all officers" is and can be no broader than the term "all offices." The statute does not encompass offices in other political subdivisions or the officers filling them, even if their duties and functions are exclusively within such municipality. A parking authority established under *N. J. S. A.* 40:11A–1 *et seq.* is a separate public entity operating independently of the municipality in which it is formed and dealing with it as a separate entity in many relationships, such as the pledge of municipal credit for its bonds. A parking authority is an agency or instrumentality of a municipality in the sense that it performs a governmental function within and for the municipality, but it is not an arm or *alter ego* of the municipality in the sense that its offices are municipal offices and its officers or employees are municipal employees.

■ Any other result would raise serious constitutional questions. The abolishment of the offices of commissioners of the parking authority would automatically terminate the parking authority, as Justice Proctor recognized in *Myers v. Cedar Grove Tp.* The commissioners wield the executive power of the parking authority. Without their offices existent, the parking authority itself could not survive, despite the statutory mandate that its termination may ensue only upon the payment and discharge of its bonds and other obligations, a provision constituting a part of the parking authority's contract with its bondholders. A construction of *N. J. S. A.* 40:69A-207, contrary to that reached here, would result in the impairment of an obligation by contract in violation of the United States Constitution. As recognized by Justice Proctor in *Myers v. Cedar Grove Tp.*, it is no answer that a responsible governing body might act immediately upon the taking effect of the Faulkner Act to re-establish a parking authority within the municipality. Under familiar principles, legislation must be construed, if possible, so as to be constitutionally valid. *State v. Hudson County News Co.*, 35 *N. J.* 284, 294 (1961).

I am holding, therefore, that the offices of commissioners of the Parking Authority of the City of Bayonne were not abolished and the terms of the incumbent officers did not cease and determine upon the taking effect of the Faulkner Act on July 1, 1962 at noon. Vincent Burke, Frank Carpenter, Sr., Jacob Drogin, Walter Pagurek and Alan Paul continue to hold office as lawful commissioners of the Parking Authority of the City of Bayonne, and the Broadway National Bank of Bayonne is directed to honor their right and title to control the bank account standing to the credit of the Parking Authority of the City of Bayonne.

Will counsel submit orders in the two pending actions in accordance with these holdings.